UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

CHRISTOPHER FUGELSANG,

                     Plaintiff           DOCKET NO.   23-CV-8332

      -against-

                                         **COMPLAINT**
                                         *Jury Trial Demanded*

**THE DEPARTMENT OF EDUCATION OF**
**THE CITY OF NEW YORK,**                           **LEVY, M.J.**

                 Defendants

_____x

PLAINTIFF CHRISTOPHER FUGELSANG, ("Plaintiff") proceeding Pro Se, as and for his

Summons and Complaint filed to protect his Constitutional rights against the above-captioned

Defendant **DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK** (henceforth

"Defendant") alleges upon knowledge as to his own facts and upon information and belief as to

all other matters:

## PRELIMINARY STATEMENT

1.      This is a civil action seeking  injunctive relief, monetary relief, including past and on-

going economic loss, compensatory and equitable damages for the deprivation of

Constitutionally protected rights given to him as a tenured teacher under Education Law §§3030

and 3020-a, Title VII (42 U.S.C. 2000e et seq.) and the New York City Administrative Code §8-

107 the Human Rights Act (NYCHRA), which prevent employers from discriminating against

employees based on an employee's perceived disabled status and/or based on an employee's

religious beliefs.

2.      Plaintiff brings this action under, 42 U.S.C. § 1983 and §1981; Title VII of the Civil

Rights Act of 1964, as codified, 42 U.S.C. §§2000 *et seq.,*citing religious discrimination; Stigma

Plus pursuant to the flag placed on Plaintiff's fingerprints ("Problem code");  First, Fifth and

Fourteenth Amendments of the United States Constitution; Education Law §3020 and §3020-a;

and those parts of the New York State Constitution which similarly apply with like language and

together with this Court's pendent jurisdiction over causes of action arising under New York

State laws, both common and statutory; NYCHRL and N.Y.C. Admin. Code §8-107(3)(a), State

laws governing employment, seeking monetary and declaratory relief against Defendant for

committing acts with the intent and for the purpose of depriving Plaintiff of property and liberty

rights without procedural and substantive due process and for refusing to or neglecting to

prevent such deprivations and denials to Plaintiff.

3.      Plaintiff, a special education tenured teacher who worked with children who received

Federal funds and services, was deliberately and intentionally discriminated against, punished

and removed from his workplace solely because of his religious beliefs, which prohibited him

from getting vaccinated by the COVID-19 vaccine. As a result, he was terminated in March 2022

without just cause, without proper notice and without a due process hearing to particularize his

religious exemption requests and Appeals. New York State Education Law §§3020 and 3020-a

and the United Federation of Teachers' Collective Bargaining Agreement ("CBA"), Article 21G

mandate a full and fair arbitration proceeding.

4.      Plaintiff completed all the necessary actions and appeals available to him, including filing

with the EEOC, however the Defendant fraudulently misrepresented that they had reviewed his

exemption requests, never gave any meaningful reason for the denials of Plaintiff's religious

exemption, and denied him equal representation under the law by giving him an arbitrary timeline that he could not comply with.

5.     The Defendant charged Plaintiff with misconduct – insubordination- and placed his fingerprints into the "Problem Code" database without his knowledge or consent and never gave him a hearing where he could clarify and particularize his sincere religious beliefs which forbade him from getting vaccinated with the COVID vaccine.

6.     But for the approval of the denial of these protected rights by the Defendant, Plaintiff was maliciously and in bad faith terminated and stigmatized permanently by being placed on the Ineligible/Inquiry or "no hire" Problem Code List.

7.     Plaintiff requests (1) his backpay and all benefits and pension steps due after Defendant's violations of law, public policy and rights removed him from his salary and career on October 4, 2021; (2) judgment against Defendant for refusing to or neglecting to prevent such deprivations and denials to Plaintiff.

## PARTIES

8.     Plaintiff was an employee for the Department of Education of the City of New York in good standing as a special education teacher since 2004. In 2014 Plaintiff moved overseas where he taught until 2019, when he returned to work at the Department. He had 13+ years working as a teacher for the Department when he was terminated. As such, he had Constitutional rights, including protected liberty and property rights, to his position. He also worked with children who received Federal funds for their special services. At all times relevant herein, Plaintiff was a public employee of Defendants within the meaning of New York State Civil Service Law § 75-b(1)(b).

9.     At all relevant times, the Defendant has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be

a recipient of substantial federal funds, and as such, is subject to the mandates under Title VII of the Civil Rights Act of 1964, the Education Law, and the First, Fifth and Fourteenth Amendments to the United States Constitution, which prohibit any diminution of tenure rights without Just Cause, discrimination, fraudulent misrepresentation of the nature and consequences of the COVID Vaccine Mandate ("CVM") and retaliation against individuals, such as Plaintiff herein. The headquarters of the Defendant is located at 65 Court Street in Brooklyn, New York.

### JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(f)(3) et Seq. ("Title VII") and Plaintiff submits his Right To Sue letter from the Equal Employment Opportunity Commission (**EXHIBIT A**). This Action is hereby commenced prior to the expiration of the ninety (90) day window to file a claim pursuant to the Right to Sue Letter.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, and 28 U.S.C 1343(2)(4); and 42 U.S.C. §1981, et seq. for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, First, Fifth and Fourteenth Amendments to the Constitution.

12.     This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as state law pursuant to claims codified in the New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy.

13.     This Court has pendent and supplemental jurisdiction over Plaintiff's state law and city law claims, as the facts that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims. Defendants were at all times

4

acting under color of law in breaching their covenant of good will and fair dealing with the Plaintiff as well as committing fraud in the inducement.

14.     This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y.

## STATEMENT OF FACTS

15.     Plaintiff, a tenured special education teacher in charge of programs and services funded by the Federal government through Defendant his employer, was unlawfully denied support for freedom from abuse of process and malicious prosecution, stigma plus character defamation and diminution of his tenure rights due to his claiming a religious belief prohibiting him from getting the COVID Vaccine.

16.     This Action seeks recovery for monetary damages – in particular the backpay, CAR days, pensionable time and other benefits - for the harm caused to Plaintiff's reputation, livelihood, and career; additionally for the distress, suffering, mental, emotional, and physical anguish, and impairment of Plaintiff's ability to secure future employment due to his placement in the Problem Code database, and impairment of earning power inflicted upon him due to the negligence, carelessness, recklessness, and misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendant.

17.     Plaintiff was hired as a teacher by the Defendant in 2009.

18.     Plaintiff earned tenure and all the Constitutional protections to his property and liberty rights pursuant to N.Y. Education Law §§3020 and 3020-a in 2012.

19.     Defendant issued a Statewide COVID vaccine mandate in August and again in September, Plaintiff has not become vaccinated with a COVID-19 vaccine because his religious beliefs as a practicing Catholic, forbade him. **EXHIBIT B,** Religious Exemption Request.

20.     On September 10, 2021 Defendant sent to Plaintiff an Impact Bargaining Statement wherein Arbitrator Martin Scheinman, founder of Scheinman Arbitration and Mediation ("SAMS") created an unlawful, supposedly non-disciplinary new term of employment for all Defendant's employees who would not, could not or did not get vaccinated with the COVID vaccine and did not claim that they were Christian Scientists or Jehovah Witnesses. See **EXHIBIT C**. Defendant informed him that if he did not submit a valid vaccination card by October 1, 2021 he would be placed on Leave Without Pay ("LWOP") on October 4, 2021 and involuntarily removed from his salary and benefits. **EXHIBIT D.**

21.     Scheinman gave his own Company, SAMS, the right to hear and deny Appeals for religious exemptions, thus establishing a money-making scheme based on denying religious exemptions and requests for medical accommodations. This procedure, where a SAMS Arbitrator put an "X" in the "Denied" box, was cited as "constitutionally unsound" in Kane/Kiel v City of New York. **EXHIBIT E.**

22.     On November 28 2021 the United States Court of Appeals for the Second Circuit merit panel concluded "It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." It also reaffirmed that a fresh consideration of people's request for religious accommodation was required.. They wrote, "In addition to the First Amendment such consideration shall adhere to the standards established by Title VII of the Civil

Rights Act of 1964, the New York State Human Rights Law, and the New York City Human

Rights Law."See Judge Ralph Porzio in the case George Garvey et al., v City of New York et al.,

Index No. 85163/2022.

23.    On January 8, 2022 Plaintiff sent an email to the Citywide Panel with additional

information to be reviewed along with his previously submitted religious exemption appeal

request and subsequent denial in November, 2021. There was no response.

24.    On March 7, 2022 Plaintiff heard back via email from the Citywide Panel that he was

denied a religious exemption. **EXHIBIT H.**

25.    On March 17, 2022 Plaintiff was notified by Defendant that he was terminated from his

employment, although he had never had a due process hearing **EXHIBIT I.**

26.    In June 2022 Arbitrator Martin Scheinman issued an Award wherein he admitted that he

had created the Leave Without Pay which omitted the right to due process. See **Exhibit F**, Scher

Lawfirm letter dated July 7, 2022 re Scheinman's Award dated June 27, 2022; **Exhibit G**

Scheinman's Award dated June 27, 2022.

27.    In Scheinman's June 27 Award (Ex. D)  Scheinman wrote:

> "... While the Department claims its action is unconnected with the Award, it is the
> Award itself that created a new leave without pay. Absent the Award, the
> Department was without the authority to remove these employees from the payroll
> without providing a due process hearing.
>
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for
> employees whose requests for a medical or religious exemption were denied. This is
> because such employees intentionally decided to disregard the mandate they be
> vaccinated by September 27, 2021, the date established by Commissioner Chokshi
> and Mayor de Blasio."

Graff adds:

> "First, Scheinman's words establish that but-for the Award, the NYCDOE could not
> have placed the Plaintiffs on leave without pay....Scheinman's words are additional
> evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a

violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman ...actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing..... admitting that his actions caused the Plaintiffs to "suffer[] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." Annis v. County of Westchester, 136 F.3d 239,245 (2d Cir. 1998)."

28.     On March 13, 2023, after the COVID Mandate ended February 10, 2023, Plaintiff sent an email to Ms. Kathy Rodi, Executive Director of the Office of Employee Relations, asking her to respond to his previous request to be placed back on salary, be taken off of the "Problem Code" and reinstated. She did not respond.

## CAUSES OF ACTION
## AS AND FOR A FIRST CAUSE OF ACTION
## TITLE VII- RELIGIOUS DISCRIMINATION

29.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 28 as if the same were fully set forth at length herein.

30.     Plaintiff has sincerely held religious beliefs which forbid him from getting vaccinated with the COVID-19 vaccine, yet Defendant flagged his personnel file with a "Problem Code", secretly barring him from getting paid for any work by any school in the NYC public school system, and creating a new category of misconduct in employment: "Insubordination by unvaccinated employees".

31.     Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied his exemption requests and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and

terminated his employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

> "The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. ….. What is most important is that "undue hardship" in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the commonsense manner that it would use in applying any such test….. Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

32.    In the new category of "insubordinate employee" and "unvaccinated", Plaintiff was not only removed unfairly and without due process from his job, but ostracized and humiliated by his peers both inside and outside of the workplace.

33.    Based on the foregoing, Defendant subjected Plaintiff to discrimination on the basis of his religion, unlawfully discriminating against the Plaintiff in the terms and conditions of his employment on the basis of his religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law

## AS AND FOR A SECOND CAUSE OF ACTION FOR FAILURE TO REASONABLY ACCOMMODATE THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS

34.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 33 as if the same were fully set forth at length herein.

35.    Plaintiff has sincerely held religious beliefs which forbid him from getting vaccinated with the COVID-19 vaccine.

36.    Defendant, the Plaintiff's employer, had actual knowledge of the Plaintiff's sincerely held religious beliefs.

37.     Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied his exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated his employment.

38.     No reasonable accommodation was offered to the Plaintiff.

39.      Defendant gave Plaintiff no opportunity to argue in support of his sincere religious beliefs to anyone at the Department or at any authorized Agency, and set up a timeline that deprived Plaintiff of any possibility of complying. Thus the due process deprivation in this matter was deliberate and intentional.

40.      In conflict with the mandate guaranteeing all citizens the  right to their religious beliefs, Defendant did not honor this law of the land and terminated Plaintiff without any interactive process to discover any reasonable accommodation nor any due process hearing.

41.      Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of his religion, unlawfully discriminating against the Plaintiff in the terms and conditions of his employment on the basis of his religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A THIRD CAUSE OF ACTION
## VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL
## PROTECTION CLAUSE

42      Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 41 as if the same were fully set forth at length herein.

43.      Defendant while acting under the color of law, unlawfully deprived the Plaintiff of his

right to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of the United

States Constitution, in that they engaged in selective enforcement of their own laws, rules,

regulations, and ordinances against Plaintiff based upon the Plaintiff's religion and Plaintiff's

constitutionally protected conduct. In so doing, Defendants intentionally and, with malicious or

bad faith intent to injure Plaintiff, selectively treated Plaintiff differently from other similarly

situated employees and acted with no rational basis for the difference in treatment. Defendants'

conduct was intentional, conducted with bad faith, wholly irrational and arbitrary and to the

detriment of Plaintiff.

44.     In Garvey c City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

> "Petitioners – all but one – applied for exemptions from the mandate. They received
> generalized and vague denials. During that time their exemptions were being processed,
> they remained unvaccinated. There was no reason that they could not continue to submit
> to testing and continue to fulfill their duties as public employees. There was no reason
> why the City of New York could not continue with a vaccine or test policy, like the
> Mayor's Executive Order that was issued in August 2021……"
> and,
> "Though vaccination should be encouraged, public employees should not have been
> terminated for their non-compliance….The Health Commissioner cannot create a new
> condition of employment for City employees. The Mayor cannot exempt certain
> employees from these orders. Executive Order 62 renders all of these vaccine mandates
> arbitrary and capricious….prohibit an employee from reporting to work."

As a direct result of Defendant's violation of the Plaintiff's Fourteenth Amendment rights

of equal protection, Plaintiff has suffered irreparable harm for which there is no adequate remedy

of law.

45.     Defendant's violation of Plaintiff's Fourteenth Amendment rights of equal protection

under the law, as alleged herein above, Plaintiff has suffered and is entitled to recover

compensatory and nominal damages including backpay.

## AS AND FOR A FOURTH CAUSE OF ACTION

11

**(VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE SPEECH AND RELIGION)**

46.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above in

paragraphs 1 through 45 as if the same were fully set forth at length herein.

47.     As a result of the Defendant's actions and in actions as set forth above, Plaintiff has been,

and continues to be, deprived of his Federal rights under 42 U.S.C., Section 1983 and the

Fourteenth Amendment due process rights, applying the First and Fifth Amendments' rights of

the U.S. Constitution.

48.   As a result of defendant's actions, plaintiff suffered and was damaged.

49.   Defendant has deprived plaintiff of such rights under color of State Law.

50.   By reason of the foregoing, Defendant unlawfully discriminated against Plaintiff as

to the terms, conditions and privileges of employment, in that Defendants did not

allow him to practice his religion, which caused his termination.

51.   Defendant has deprived Plaintiff of such rights under color of State Law.

52.   These acts by Defendants are in violation of Plaintiff's rights to practice his religion

guaranteed under the First Amendment to the United States Constitution.

**AS AND FOR A THIRD CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT TO DENY PLAINTIFF HIS PROPERTY AND LIBERTY RIGHTS TO A DUE PROCESS HEARING AS A TENURED TEACHER MANDATED BY EDUCATION LAW 3020 AND 3020-A**

53.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs 1 through 52 as if the same were fully set forth at length herein.

54.     Plaintiff was punished with wrongfully being terminated for his "insubordination" in not

getting vaccinated with the COVID vaccine

55.    Education Law Section 3020 , Chapter 16, Title 4, Article 61 states as follows:

> "Discipline of teachers. 1. No person enjoying the benefits of
> tenure shall be disciplined or removed during a term of employment
> except for just cause and in accordance with the procedures specified in
> section three thousand twenty-a of this article"

and,

> "2. No person enjoying the benefits of tenure shall be suspended for a
> fixed time without pay or dismissed due to a violation of article
> thirteen-E of the public health law….. (iii) the provisions of
> subdivisions one and two of this section shall not apply to agreements
> negotiated pursuant to this subdivision…"

56.    Plaintiff did not, at any time, waive his rights to a 3020-a hearing on his religious exemption request. He wanted his due process to be honored. Instead, he was declared insubordinate by the Department, his personnel file was flagged and his fingerprints tagged with a with a "Problem Code" designating misconduct and put into the same database used by the FBI.

57.    The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301 U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937). In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

58.    Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given

(Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of

Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450).

59.    Tenured teachers have a property and liberty right to their jobs, and therefore when there is

any penalty that reduces the benefits of these rights, there must be Just Cause. Judge Desmond

Green in the Richmond County Supreme Court  ruled in the case of Rosalie Cardinale that:

> "New York State created the public school tenure system guaranteeing continued
> employment to tenured teachers by statute and therefore created a property right in a
> tenured teacher's continued employment. (See Education Law§§§ 3012, 3012- a, 3020,
> Holt v. Board of Educ. Of Webutuck Cent. School Dist., 52 NY2d 625 [1981], Matter of
> Abromovich v. Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven &
> Smithtown, 46 NY2d 450 [1979]). Where a property right in continued employment
> exists, such as New York's tenure system, the recipient of such a right may not be
> deprived without due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532,
> 538 [1985].
> New York State guarantees a tenured teacher's due process rights to continued
> employment by statute requiring that "no [tenured teacher] ... shall be disciplined or
> removed during a term of employment except for just cause and in accordance with the
> procedures specified in section three thousand twenty-a of this article or in accordance
> with alternate disciplinary procedures contained in a collective bargaining agreement ... "
> Education Law § 3020."

60.    Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and

as a result, discriminated against the Plaintiff on the basis of his religion, unlawfully

discriminating against the Plaintiff in the terms and conditions of his employment on the basis of

his religion, in violation of  Education Law §3020, §3020-a, Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State

Human Rights Law); and N.Y.C. Human Rights Law.

## PLAINTIFF DEMANDS A TRIAL BY JURY

**WHEREFORE,** the Plaintiff demands judgment against the Defendant for all compensatory, emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which he is entitled, including but not limited to:

1.  Awarding Plaintiff his tenured position and salary given to him before October 2021, in full, with benefits; and

2.  Awarding Plaintiff all the backpay that ensued after he was placed on a Leave Without Pay;

3.  Granting such other and further relief that the Court seems just and proper.

Dated: November 9 , 2023

Christopher Fugelsang

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CHRISTOPHER FUGELSANG

**(b)** County of Residence of First Listed Plaintiff  QUEENS
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Christopher Fugelsang    (718) 928-4483
216 Beach Breeze Pl Apt.2    cfugelsang@gmail.com
Arverne NY 11692    Pro Se

## DEFENDANTS

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK

County of Residence of First Listed Defendant   New York
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
New York City law Department

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

*Does this action include a motion for temporary restraining order or order to show cause? Yes ☐ No ☒*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans (Excludes Veterans) | ☐ 340 Marine | Injury Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - Medical Malpractice | Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | or Defendant) | ☐ 896 Arbitration |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | Agency Decision |
| | ☐ 448 Education | ☐ 550 Civil Rights | Actions | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: Title VII

Brief description of cause: wrongful termination after deprivation of rights.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $500,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

CHRISTOPHER FUGELSANG )
)
)
)
)
_____ )
*Plaintiff(s)* )
v. ) Civil Action No.
)
)
THE DEPARTMENT OF EDUCATION OF THE )
CITY OF NEW YORK )
_____ )
*Defendant(s)* )

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK
65 COURT STREET
BROOKLYN, NY 11201

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: _____       _____
*Signature of Clerk or Deputy Clerk*

(Exhibit A)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**San Juan Local Office**
525 F.D. Roosevelt Ave
Plaza Las Americas, Suite 1202
San Juan, PR 00918
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/11/2023

**To:** Mr. Christopher Fugelsang
216 Beach Breeze Place Apt 2
ARVERNE, NY 11692

Charge No: 520-2021-04900

EEOC Representative and email:  LUIS CALZADA
Investigator
luis.calzada@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally signed by William R. Sanchez
Date: 2023.08.11 15:38:32 -04'00'

William R. Sanchez
Director

**Cc:**
Laura Berman
NYC Department of Education
52 Chambers Street, Room 308
New York, NY 10007

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

identifying your request as a "FOIA Request" for Charge Number 520-2021-04900 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500

Miami, FL 33131.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 520-2021-04900 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500

Miami, FL 33131.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

(Exhibit B)

Christopher Fugelsang
14 Ocean Avenue
Rockaway Point, NY 11697

October 24, 2021

NYC Department of Education
65 Court Street
Brooklyn, NY 11201

**\*REVISED\***
To Whom it May Concern:

At the time of writing this letter, I have been an employee of the NYC Department of Education schools for more than 12 years. I have a wife, Catherine Fugelsang and a daughter, Simone Fugelsang, who is 8 years old.

In this letter I would like to share with you my sincere religious faith and how my practice of Catholicism and understanding of Christian teaching has led me to challenge vaccination. I will describe how I arrived at my interpretations. In my adult life, I have never received a vaccination and I continue to hold steadfast in my understanding of biblical and theological teaching on this matter.

I will be including the appropriate information from NY State regarding Religious Waivers to Immunizations. I believe it is illegal to be removed from my appointed position over my sincerely held religious beliefs **under Title 7 of the 1964 Civil Rights Act.**

I have notarized this application and letter. Therefore, I swear all of the contents of this letter are 100% true. NY State law allows an employee to refuse immunization based on a sincere and genuine personal religious belief.

The general public today is often extremely judgmental of people who hold strong religious convictions. Because of this I have felt that it is best to be very private about my beliefs and my decision to pursue a religious waiver. I ask that this application be kept 100% confidential as it contains thoughts and sentiments not shared with others in my workplace or the general public.

People have also been misled about the Catholic Church and vaccination. The media had misinterpreted Vatican comments purportedly showing support for

1

vaccination. Statements from the Vatican and Pontifical Academy for Life were also mere application guidelines. I can provide evidence for that (several pages long). School administrators in NYS must ignore the views of leaders of religious organizations, and instead evaluate the beliefs, and its support, proffered solely by the applicant. NY CLS Pub Health §2164(9) was amended in 1989, because the prior statute authorized schools to judge the correct interpretation of scripture by one cleric over another. See: Sherr and Levy v. Northport East-Northport Union Free School District, 672 F. Supp. 81
(E.D.N.Y. 1987).

 Catholics who wish to refuse vaccines have a tenet of the Roman Catholic Church to justify it—Moral Conscience. Moral Conscience supersedes application guidelines, and it is reiterated in the opening pages of the Catechism, in which a letter signed by Pope John Paul II, reads that the book is a sure teaching norm of the faith—which makes it a rock solid tenet that must be obeyed. In fact, Liberty Counsel—a legal foundation in Florida which files lawsuits involving freedom of religion—had argued the Catechism's support of conscience to win its appeal in a religious exemption case in Arkansas, which cited immoral vaccines via aborted fetal cell lines.

This is the Catholic Church's actual position on vaccines:

https://www.vatican.va/roman_curia/congregations/cfaith/documents/rc_con_cfaith_doc_20201221_nota-vaccini-anticovid_en.html

Specifically, the Vatican says "*practical reason makes evident that vaccination is not, as a rule, a moral obligation and that, therefore, it **must be voluntary**…. Those who, however, **for reasons of conscience, refuse vaccines produced with cell lines from aborted fetuses**, must do their utmost to avoid, by other prophylactic means and appropriate behavior, becoming vehicles for the transmission of the infectious agent*.

As instructed in Catholic Doctrine, in Dignitas Humanae, Pope Paul VI wrote in 1965: "It is through his conscience that man sees and recognizes the demands of divine law. He is bound to follow this conscience faithfully in all his activity so that he may come to God, who is his last end."

Growing up in a devout and traditional Catholic family, these values were instilled in me at a young age. My father was a deacon in the Church and my mother, my 4 brothers and I attended mass on Sundays and on Holy Days. I was an altar boy and served with my father each week at the 8:30 AM mass at St. Agatha's Parish in Brooklyn, New York. I received all the required Sacraments. Concurrently, I attended elementary school at

St. Catherine of Alexandria from Grades 1-8. During this period of time, my family would come together several times a week to pray the Rosary, read scripture, and learn about

2

Catholic teachings. At school one of my favorite subjects was religion class. Because my family practiced our faith, in depth, at home, I was always confident in my ability to understand deep theological ideas and discuss them with my peers and teachers.

When I was 10 years old, a specific incident happened to me that solidified and deepened my personal relationship with God. I woke up in the middle of the night with a nosebleed as I often did at that age. I walked through the kitchen to inform my mother of the situation and on the way came face to face with a burglar! I was so frightened that I ran back into my room and lay in bed thinking my life would end that night. As I lay there bleeding, I prayed longer and harder than I ever had before and in that moment I realized my ability to have a direct and profound relationship with my Lord and to call on Him in a time of need. I laid in bed in incessant prayer for over 3 hours until my father awoke. That morning we discussed what had happened and prayed together. My parents lovingly helped me to process the traumatic event and we concluded that we must pray for the man who was so desperate to attempt to steal from us. In my classroom that day, during morning prayers, I requested a special intention for that man to change his sinful path and forgave him. That day, I was forever changed and committed to a life of prayer and spiritual discernment.

I continued on to Catholic High School (St. Edmund Prep, Brooklyn) where I spent four years, and chose above all other schools a Catholic College (Saint Anselm College, NH). During this time I continued to explore my faith and became close with many of my Catholic classmates and the Priests and Brothers of the Benedictine Order who lived on campus. I took courses in Biblical Theology, Christian Moral Life, & Christian Social Ethics which helped form my current beliefs on starting a family, raising children, and following a moral and righteous life in the teachings of the Church. During college is when I first felt the call to a Religious Vocation. I obtained the support of a Spiritual Director which led me on a path to several years of volunteer service and conversations with several different Religious Orders. My first volunteer trip was to the Juarez-El Paso border where we learned about the struggle of the migrant families and the difficult crisis at the border. The year after college I completed a full year Catholic Volunteer program called the Jesuit Volunteer Corps in Portland Oregon, where we lived out our Christian Values by practicing poverty, working with the disadvantaged, and living in community. This experience was also transformative in my spiritual growth and allowed me to challenge, explore, and solidify many of the beliefs I have been exposed to in my Catholic upbringing. As a result I was able to come into a stronger Faith in God than I ever had been previously.

As my volunteer year in Portland came to an end in 2003, I decided to return to my hometown of Brooklyn, NY to become a NYC School Teacher with the Teaching Fellows

3

program and continue in discernment to become a Catholic Priest. I believed that my work with children during this process would be giving back to the underprivileged children of my hometown and fulfilling my duty as a Christian, while simultaneously pursuing my vocation. My self-exploration brought me to the final stages of becoming a Maryknoll Missionary Priest. During this time I was also feeling called to a life of marriage and I wondered if God wanted me to have children. After another year of discernment, I came to the realization that joining a Religious Order was not what God had planned for me. I had developed a love for my job and began a relationship with someone I wanted to marry and started a family. I married my wife Catherine in 2009 and we had our only child, Simone who we are also raising in the Catholic Faith. Simone just received her First Communion this past May.

As a school teacher in NYC, I always felt that I was fulfilling a vocation, not just a career. My work with children has always been in direct alignment with my Catholic upbringing. In my classroom, I aim to create relationships and bonds with students encouraging them, above all else, to become individuals with strong moral character.

I think it's safe to say that my Catholic Faith has shaped who I am and has brought me to a greater understanding of a God I personally know. An all-powerful God of love, healing, acceptance and forgiveness.

**Turning Away From Vaccination**

My current beliefs continue to be highly influenced by my Catholic upbringing, however as I have grown in my faith, my beliefs have become more refined and traditional over the years and seem to misalign with some of the current stances taken by Catholic Religious leaders. I remain true to many of my Catholic fundamental core values, but I diverge in my sincerely held belief that abortion is murder and aborted fetal cells should never be used in medical procedures or their testing of medicines or vaccines.

I came to learn that many vaccines contain aborted fetal and animal cells when I had a conversation with my brother in December 2020, when the first doses of the COVID-19 Vaccine became available to the public. He informed me of this fact during a family gathering and presented some convincing arguments that shocked me and my other family members. Shortly thereafter, I decided to do some in depth research of my own. Below are some of the links to the information that I researched that prove this

information to be validated. After reading this, I decided that under no circumstance could I knowingly take a vaccine that uses aborted fetal cells. Doing so would put me in a state of grave sin and jeopardize my salvation.

https://cogforlife.org/wp-content/uploads/Abortion-Tainted-Vaccines.pdf 4


https://s27589.pcdn.co/wp-content/uploads/2020/12/CHART-Analysis-of-COVID-19-Vaccines-02June21.pdf

https://catholiccitizens.org/issues/abortion-stem-cells-derived-from/94529/verify-yes-johnson-johnson-used-aborted-fetal-cell-lines-in-its-creation-of-the-covid-19-vaccine/

https://www.gmp-creativebiolabs.com/per-c6-cell-lines_74.htm

These are heinous practices. These babies were alive when their organs were extracted.

https://www.catholiceducation.org/en/controversy/abortion/exploring-the-dark-world-of-vaccines-and-fetal-tissue-research-part-1.html

This practice is diametrically opposed to my core Catholic value system that by being vaccinated with any of the available COVID-19 vaccines, I would be cooperating with and complicit in abortion - the ending of an innocent human life - and that such would constitute a sin against God and a violation of His Commandments, for which I would be held morally accountable to God.

As a Catholic, I find it is my moral duty to uphold the traditions, customs, and principles that I, with my extensive Catholic training, see fit. I continue to pray each day that God guides me on the righteous path.

*"Show me the path where I should go, O Lord, show me the right road for me to walk."* Psalms 25:4

As in all prior experiences in my life, at times of uncertainty, I put my trust in God above all else. I believe God is showing me the path to walk on and I ask myself "who am I" to turn my back on his direction for me during these confusing times. With so much conflicting information from myriad sources, it is impossible to rely on anyone but God to show me the way.

**Your Bodies Are Temples Of The Holy Spirit**

I found online several medical sources which confirm that blood cell elements remain in all vaccines marketed in the US.

https://www.fda.gov/BiologicsBloodVaccines/ucm133705.htm
http://medcraveonline.com/IJVV/IJVV-04-00072.pdf
http://info.cmsri.org/the-driven-researcher-blog/dirty-vaccines-new-study-reveals
Prevalence-of-contaminants

5

https://www.cdc.gov/vaccines/pubs/pinkbook/downloads/appendices/b/excipient-table-2.pdf

That is why vaccination contradicts Christian teaching. Injecting these animal blood products directly into a person's body is a defilement. The Holy Spirit dwells in our body. This is a divine mystery and teaches us about our connectedness to God. "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own; you were bought at a price. Therefore honor God with your bodies." (1 Corinthians 6:19-20) Because our human bodies are temples for the Holy Spirit, the way in which we care for our bodies is of the utmost importance. We must look to the bible on this matter, in which there is a lot of wisdom and guidance about the care of our bodies and the ways to keep our blood pure.

Blood has a very special place in the teachings of God. Blood is considered sacred and holy and is also considered to be "life" in the bible. The Bible tells us not to mix our blood with foreign blood. We have to keep our blood clean. "For the life of a creature is in the blood, and I have given it to you to make atonement for on the altar; it is the blood that makes atonement for one's life." (Leviticus 17:11) The relationship between "blood" and "life" is highlighted here and a parallel drawn between the pure and the impure, the sacred and the profane, the clean and polluted. Our blood must be kept pure for us to be in compliance with this teaching. Allowing our blood to be mixed with foreign blood cells is, therefore, not to be sanctioned.

"This is a lasting ordinance for the generations to come, where ever you live: you must not eat any fat or any blood." (Leviticus 3:17) Again here we see an order instructing us to keep our blood pure by refraining from taking "other" blood into our bodies. This again implies that our blood should not be contaminated by outside sources such as the blood of animals.

Mosaic Law or the system of laws that was given to Moses by God, is the law of life for all people. When reading this law, the key issue is that the blood of any creature must not be consumed, so it stands to reason that it may certainly not be injected directly into our bodies. Doing so is a joining of the unclean with the clean

sanctified blood, an act of pollution. There are no greater restrictions on unholy mixing than there are for blood. "You shall not eat anything with the blood: Neither shall you use enchantment, nor observe times." (Leviticus 19:26) This law is so serious that even non-Jews were not allowed to eat the blood. "Therefore, I have said to the people of Israel, No person among you shall eat blood, neither shall any stranger who sojourns among you eat blood." (Leviticus

6

17:12) Once again, this passage prohibits the consumption of blood, a theme that is repeated frequently in the Holy Scriptures. Additionally, no animals qualified as an exception to the law: "Moreover you shall eat no manner of blood, whether it be foul or of beast, in any of your dwellings." (Levitcus 7:26)

Another verse which speaks on this issue tells us "...since the life of every living body is in its blood, anyone who partakes of it shall be cut off." (Leviticus 17:14) This is a very clear direction from God to avoid this defilement of the blood, and speaks of the very dire consequences for disobeying. We are also told ..."to abstain from meat sacrificed to idols, from blood, from meats of strangled animals, and from unlawful marriage. If you keep from these, you will be doing what is right." (Acts 15:29) I feel that this last quote contains some very specific instructions on living your life in accordance with biblical teachings.

I would like to speak more about the issue of the sacredness of human blood, as I feel that it is vital to my beliefs. Human blood is sacred. The bible instructs us to keep our bodies pure and holy. "Follow God your Lord, remain in awe of him, keep his commandments, obey and serve him and you will then be able to cling to him. The physical body is the form which houses the lofty soul and therefore must also remain holy and pure and God would keep the body healthy without defilement, you must be holy, since I am God your Lord, and I am holy." (Leviticus 19:11)

That passage again refers to the physical body as the "house" or "temple" for the soul. Of course, if the body is the house, the blood is the life force that continuously circulates to bring purity and remove waste from the human body. Biblically, Human blood was to be kept pure under all circumstances and free of contaminants like animal parts and animal blood which would serve to pollute the soul's temple.

Hundreds of references to the sanctity of blood can be found throughout the Bible, not only in the Old Testament but in the New Testament as well. Blood, above all other parts of the body, is considered the most sacred. Blood was shed by Jesus Christ to atone for the sins of mankind and was spilled as a way to seal the covenants with God. "And he said to them, this is my blood of the covenant,

which is poured out for many." (Mark 14:24) Here blood is depicted as not only an element of sacredness but as a metaphor for the purification of sin. In the New Testament we see the topic of blood referenced often. Jesus Christ who is God in human form, has blood which is pure and can cleanse us of our sins. This is the miracle of Christ which was done for his followers. "How much

7

more, then, will the blood of Christ, who through the eternal Spirit offered himself unblemished to God, cleanse our consciences from acts that lead to death, so that we may serve the living God!" (Hebrews 9:14) It is with the coming of Christ that blood becomes a transformative element.

For Catholics the Eucharist is the Sacrament in which we consume the body and blood of Christ. It is His blood and His blood alone which cleanses us. The Eucharist sacrament strengthens and nourishes the faithful in mind and spirit as we eat the body and drink the blood of Christ. It is through the Eucharist that we become united with Christ through his humanity. "Whoever eats my flesh and drinks my blood remains in me and I in him. (John 6:56) We may achieve salvation through the body and blood of Christ.

Our Lord sacrificed his body and blood so that he might save our souls. Jesus' blood was untainted. Through Him with Him and in Him we may achieve salvation, and through His blood we may be reconciled with God the Father. This is why it is so important to keep our own blood pure. One of my favorite bible passages is the sharing of the first communion during the last supper, when Jesus ate his last meal with his apostles. During this special meal, Jesus said "Take this all of you and eat from it. This is my body which shall be given up to you. Take this all of you and drink from it. This is the cup of my blood, the blood of the new and everlasting covenant. It will be shed for you and for all so that sins may be forgiven. Do this in memory of me." (Matthew 26:23-24)

The human body, made in God's image, is perfect. I didn't know it at the time but this is what I was realizing when I was spending time with those small babies in Haiti. In their innocence their little bodies were the perfect temples of The Holy Spirit. We as human beings cannot improve upon what God has made. The Mrna vaccines insert a genetic code into our bodies. This is a code that we were not born with, a code that was not made by God.

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mRNA.html?s_c id=11347:%2BmRNA%20%2Bvaccine:sem.b:p:RG:GM:gen:PTN:FY21

To accept this synthetic code is telling God that He did not make us perfectly, that we

need to be improved, and that science can do that. This is unacceptable to me because I do believe that everything God has made is indeed perfect.

The defilement of human blood is a dismissal of god as is clearly stated repeatedly in The Bible. Blood is the holiest component of our bodies and must remain free from impurities. This leads me to my second revelation about the sinfulness of

8

vaccination.

## You Cannot Worship Two Gods

My research ultimately led me to one other issue with vaccination that makes it incompatible with my Faith in God. Vaccination is unique among medical procedures, in that it alters our precious blood in order to improve upon God's creation. The practice of vaccination presumes that God's perfect creation does not have the resources to deal with disease. Vaccinating a perfectly healthy child is rejecting God's wisdom and instead seeks refuge in modern medicine. In the Bible we are promised good health through living righteously in accordance with scripture. The prophylactic intervention of vaccination in a healthy individual is demonstrative of a lack of faith in God. It is also demonstrative of a lack of faith in His power. It is stated "And on the basis of faith in His name, it is the name of Jesus which has strengthened this man whom you see and know; and the faith which comes through Him has given Him this perfect health in the presence of you all." (Acts 3:16)

The Bible teaches us that there is a very close correlation between body and soul. In fact these two elements of our humanity are closely interrelated. What happens to one will affect the other. A sickness of the soul, such as sin, may manifest itself outwardly through sickness in the body. Belief in Christ is the foundation upon which we place our faith and have hope for protection from God in all aspects of our life. This includes maintaining good health. If, instead of our faith in Jesus Christ, we place our faith for good health in vaccination, then one does not have faith in God, but places his faith upon a manmade invention. Not in God's power. God did not make a mistake when creating us. He did not make us deficient. God's creation is perfect and does not need to be improved upon with vaccines to boost an inadequate or flawed immune system. "But as it is, God arranged the members in the body, each one of them, as he chose." (1 Corinthians 12:18)

Since God is omniscient, He knew that we would face illnesses and diseases. He equipped us with more than adequate bodies to live in this world including all it needs to function, fight infections, and build immunity. God's design is not to be

questioned and does not need man's improvements. "For who has known the mind of the Lord so as to instruct him?" (1 Corinthians 2:16)

Modern medicine makes the claim that vaccination is a "superior" protection capable of bestowing salvation over those who accept it. However, I believe that human beings are not capable of improving upon God's creation. We learn in the

9

bible that God is perfect. "So God created man in His own Image, in the Image of God He created him." (Genesis 1:27) Therefore, because God is perfect and we are created in his image, human beings are also perfect.

It sometimes feels that in our modern society doctors have taken the place of priests and medicine has replaced religion. People accept what their physicians say as gospel. These physicians tell us that everyone needs to be vaccinated in order to eradicate disease. The issue with this lies in the fact that medical science is a continually evolving field. Many of the medical practices of the past that were thought to be man's salvation have been debunked as new developments and findings replace the old ones. Ultimately the bible tells us to place our faith in the lord, and not in mankind. "That your faith should not be in the wisdom of men but in the power of God." (1 Corinthians 2:5)

I would like to return to a point I spoke on briefly, earlier. I have no problem with modern medicine in general. I have a personal general Practitioner, who I have been with for many years and for whom I have a vast amount of respect. His opinions and advice mean a great deal to me. The issue here, for me, lies in the fact that vaccination is different from other medical procedures. Vaccination, and not ordinary medical treatments permanently changes the composition of our blood, to repair what a perfect God "supposedly" could not accomplish on his own. I cannot accept that, and I believe that no person of faith could. Vaccination is quite different from taking medication for a fever or putting a cast on a broken limb as those interventions are attempting to return the body to its natural state, while vaccination is altering the body from the way that God made it.

Making the choice not to get vaccinated and to go against what mainstream society has deemed to be important has been a very difficult decision for my family, filled with stress and many sleepless nights. I've taken comfort in the following passage many times. "Whoever knows what is right to do and fails to do it, for him it is sin." (James 4:17) Sometimes we may have to follow a different path if we wish to walk in the footsteps of Christ.

Each night before we go to sleep, I pray with my daughter. I pray that she will be full of health, kindness, creativity, and that she will change this world for the better. When she sick, I make informed decisions about their health by seeking the medical advice of her pediatrician when necessary. My actions remain in line with my religious beliefs. At night I also pray for guidance from God. I seek His guidance in my decisions for the care of my family and myself in all areas of my life. I pray that my faith will guide my conscience and help me make

10

important choices. I seek God's will in accordance with his law. Getting vaccinated would be compromising my relationship with the Lord. "He who acts against his conscience loses his soul." (Fourth Lateran Council, 1215)

My life is blessed. I have a wonderful family and job that fulfills me in so many ways. It has become very clear to me that vaccination runs counter to the principles of Christianity, and to allow it would be a breach of my faith. As Catholics, we have been delegated an authority over our own bodies by God and we must exercise it as we see fit.

Not all Catholics will agree with me, but that doesn't make me any less a Catholic. This bishop also disagrees with the church's position. He isn't being excommunicated. I am just as much a Catholic as he is.

https://catholiccitizens.org/issues/church-state-relations/93628/bishop-schneider-on-covi d-vaccines-the-ends-cannot-justify-the-means/

I would like to end this letter by assuring you that these beliefs are of a real and very sincere nature. I am respectfully requesting that you grant me an exemption from vaccination and allow me to continue my employment in the NYC Department of Education.

Sincerely,

Christopher Fugelsang

(Exhibit C)

```
-------------------------------- X
In the Matter of the Arbitration
                                  X
        between
                                  X
BOARD OF EDUCATION OF THE CITY          Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF    X
NEW YORK
                                  X
        "Department"
                                  X
        -and-
                                  X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO             X

        "Union"                   X

-------------------------------- X
```

**APPEARANCES**

    **For the Department**
     Renee Campion, Commissioner of Labor Relations
     Steven H. Banks, Esq., First Deputy Commissioner
     and General Counsel of Labor Relations

    **For the Union**
    STROOCK & STROOCK & LAVAN, L.L.P.
      Alan M. Klinger, Esq.

    Beth Norton, Esq., UFT General Counsel
    Michael Mulgrew, UFT President

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

### BACKGROUND

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021. The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic. During that time, we have seen substantial illness and loss of life. There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant. Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible. Yet, municipal employees have often borne great risk. The Department and the UFT are no exception. The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year. Educators at all levels strove to deliver the best experience possible under strained circumstances. For this

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning.  They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters.  In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate.  That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits.  This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021.  That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate.  A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters.  The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters.  Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions.  Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved.  By agreement of the parties, the process moved to arbitration.  They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions.  They did so.  Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate.  I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements.  As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings.  All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters.  The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated.  Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected.  The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims.  I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved.  They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

**Opinion**

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

I.   **Exemption and Accommodation Requests & Appeal Process**

As an alternative to any statutory reasonable accommodation

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)— with contraindications delineated in CDC clinical

7

considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

12

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. <u>Leave</u>

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

13

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

    i. Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

    ii. No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

    iii. Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

14

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv. Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v. In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child. As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi. If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

15

     vii.   All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

## III. **Separation**

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons. An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

16

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE.   Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

contained, herein, all parties retain all legal rights at all times relevant, herein.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK       )
                        )   ss.:
COUNTY OF NASSAU        )


I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOT.UFT.Impact Bargaining.awd

18

(Exhibit D)

**From:** NYCDOE noreply@schools.nyc.gov
**Sent:** Tuesday, September 28, 2021 4:12 PM
**To:** Fugelsang Christophe CFugelsang2@schools.nyc.gov
**Subject:** DOE Vaccination Portal

Dear Colleague,

You are receiving this email because our records indicate that you have not yet used the **DOE Vaccination Portal** to submit proof that you have received at least one dose of a COVID-19 vaccine, as required by the DOE's COVID-19 Vaccine Mandate. **The deadline to upload this information is 11:59pm on Friday, October 1.**

**If you fail to meet this deadline, you will be removed from payroll and placed on Leave Without Pay status (LWOP) beginning Monday, October 4,** unless you are on an approved vaccine exemption or leave, you will not receive compensation. Additionally you may not use annual leave, CAR or sick time in lieu of Leave Without Pay.

**In order to avoid being placed on LWOP status, you must use the DOE Vaccination Portal to upload your proof of vaccination no later than October 4.**

If you have an approved vaccine exemption, or an approved leave your status will be updated shortly. Employees in certain titles including substitutes will be placed in another inactive status, not a leave without pay.

For more information about where to get vaccinated, visit vaccinefinder.nyc.gov or call 877-VAX-4-NYC.

For the latest COVID-19 staffing updates, please visit the Coronavirus Staff Update InfoHub page.

If you encounter technical issues using the Vaccination Portal, please contact the DOE Help Desk by opening a ticket online or calling 718-935-5100.

Sincerely,

DOE Vaccination Portal Team

SCHEINMAN ARBITRATION AND MEDIATION SERVICES (Exhibit E)

--------------------------------------------- x

In the Matter of the Arbitration                x

      between                                x

NEW YORK CITY DEPARTMENT OF EDUCATION         x        Re: UFT. 998

      and                                   x

   CHRISTOPHER FUGELSANG                       x

--------------------------------------------- x

Issue: _____Religious Exemption_____

Date of Hearing: _____

## Award

APPLICATION FOR EXEMPTION: GRANTED [ ]    DENIED [X]    OTHER [ ]

_____

_____

_____

_____

_____

_____

Arbitrator _____        Date __9/25/23_____

Barry J. Peek, Esq.

(Exhibit F)

# THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H. SCHER*
JONATHAN L. SCHER**

AUSTIN R. GRAFF*

TEL. 516-746-5040

FAX 516-746-5043

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S. NAYBERG

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

July 7, 2022

**BY FEDERAL EXPRESS AIRBILL NO. 777327941330**
**AND BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:   Broecker, *et al.* v. New York City Department of Education, *et al.*
              Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

    This law firm represents the Plaintiffs in the above-referenced Action. The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon new documentary evidence obtained yesterday contained in the filing with the New York State Supreme Court, County of New York in a newly filed litigation entitled *In the Matter of the Application of the Board of Education of the City School District of the City of New York, et al. v. United Federation of Teachers, Local 2, AFT, AFL-CIO, et al.* under Index Number 451995/2022 ("DOE Proceeding"), regarding a dispute over a new arbitration decision by the Defendant Martin Scheinman ("Scheinman") materially and relevant to the pending Motions to Dismiss.

    The *New York Post* reported yesterday on the DOE Proceeding which challenges Scheinman's Opinion and Award relating to 82 NYCDOE employees placed on leave without pay by the New York City Department of Education ("NYCDOE") for filing allegedly false vaccine cards. *See*, **Exhibit A**, a copy of the *New York Post* article.

    Through due diligence, we were able to find the NYCDOE's filings in the DOE Proceeding, which included the new Opinion and Award issued by Scheinman that directly relates to the pending Motions to Dismiss in the above-referenced Action.

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 2 of 3

In Scheinman's newest Opinion and Award (**Exhibit B** ("Opinion and Award")), Scheinman states with respect to the UFT Arbitration Award ("Award"):

> … While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

**Exhibit B**, at page 10.

This language, written by Scheinman in the Opinion and Award supports three arguments previously made by the Plaintiffs in opposition to the Motions to Dismiss:

First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing." **Exhibit B**,

# The Scher Law Firm, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 3 of 3

at page 10. Scheinman's own words establish that the Plaintiffs have stated a plausible claim for a violation of 42 U.S.C. § 1983 against the NYCDOE and Scheinman because as he admits, without his Award, the NYCDOE would have had to provide the Plaintiffs with due process before placing them on leave without pay, admitting that his actions caused the Plaintiffs to "suffer[ ] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Accordingly, the Scheinman Defendants' Motion to Dismiss must be denied.

Third, Scheinman confirms that it was him who "decided [leave without pay] was appropriate", which means that the NYCDOE and the UFT did not "continu[e] to negotiate until an 'agreement' [was] reached" but instead the resolution of the NYCDOE's and UFT's impasse was imposed by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f). *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016). Scheinman's words confirm that the Award was a newly created and imposed remedy to the school district's impasse in negotiations with its union and therefore violated clear and unambiguous statutory language requiring a school district, like the NYCDOE, and its union, like the UFT, to overcome any impasse at the bargaining table and not through any other means. As a result, Scheinman's words support the Plaintiffs' argument that they have a plausible claim that the Award was promulgated and instituted without any statutory authority.

*******************

The Plaintiffs thank the Court for its courtesies in accepting the Plaintiffs' supplemental filing, considering the Opinion and Award only came into the Plaintiffs' possession yesterday and the Plaintiffs believed, as shown above, that the Opinion and Award is material and relevant to the pending Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)



**SCHEINMAN**
ARBITRATION & MEDIATION SERVICES

(Exhibit G)

June 27, 2022

**Via E-Mail Only**
Liz Vladeck, Esq.
New York City Department of Education
Office of the General Counsel
52 Chambers Street, Room 308
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Michael Mulgrew, President
Beth Norton, Esq.
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:   **Board of Education of the City School District of the City of New York**
      **and**
      **United Federation of Teachers, Local 2, AFT, AFL-CIO**
      **(Proof of Vaccination)**

Dear Counsel:

Enclosed please find my Opinion and Award in the above referenced matter.

I have also enclosed my bill for services rendered.

Thank you.

Sincerely,

Martin F. Scheinman

MFS/sk
NYCDOE.UFT.proof of vaccination.trans

Case 1:23-cv-08332-LDH-RML   Document 1   Filed 11/09/23   Page 58 of 72 PageID #: 58

```
-------------------------------- X
In the Matter of the Arbitration
                                 X
            between
                                 X     Re: Proof of
BOARD OF EDUCATION OF THE CITY             Vaccination
SCHOOL DISTRICT OF THE CITY OF   X
NEW YORK
                                 X
         "Department"
                                 X
          -and-
                                 X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO            X

            "Union"              X

-------------------------------- X
```

**APPEARANCES**

> **For the Department**
>    Liz Vladeck, General Counsel

> **For the Union**
> STROOCK & STROOCK & LAVAN, L.L.P.
>    Alan M. Klinger, Esq.

>    Beth Norton, Esq., UFT General Counsel
>    Michael Mulgrew, UFT President

**BEFORE:**  Martin F. Scheinman, Esq., Arbitrator

Case 1:23-cv-08332-LDH-RML   Document 1   Filed 11/09/23   Page 59 of 72 PageID #: 59

## BACKGROUND

The Union protests the Department's decision to summarily place approximately eighty two (82) Department employees on leave without pay, with benefits, effective April 25, 2022.  This action was based upon information the Department received from a separate investigative agency these employees' proof of COVID-19 vaccination was allegedly fraudulent.  The Union contends the issue of whether the Department's action is proper and falls within the scope of my September 10, 2021, Award ("Award").

Most of the basic facts are not in dispute.

In July 2021, former Mayor de Blasio announced a "Vaccine-or-Test" mandate which required the City workforce, including the educators, to either be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.  Thereafter, on August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in Department buildings. Those employees would be subject to a "Vaccine Only" mandate.  That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto Department premises, would not be paid for work and would be at risk of loss of job and benefits.

2

Case 1:23-cv-08332-LDH-RML   Document 1   Filed 11/09/23   Page 60 of 72 PageID #: 60   RECEIVED NYSCEF: 07/01/2022

This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

The Union promptly sought to bargain the impact and implementation of the Vaccine Only mandate. The parties had a number of discussions, but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The Department did not challenge the statement of impasse and PERB appointed me to mediate the matters. Mediation sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.

Arbitration sessions were then held. On September 10, 2021, I issued an Award which set forth a detailed procedure to be followed in the cases of employees who sought an exemption to the Vaccination Mandate based on a medical condition or religious reasons.

3

In accordance with the procedure set forth in my Award, employee requests for an exemption were initially submitted to the Department along with any supporting documentation. An employee wishing to appeal an adverse determination by the Department was given the opportunity to appear at a hearing before an impartial arbitrator who was authorized to render a final and binding decision. Approximately five hundred (500) appeals were determined by the arbitration process. Pending the arbitrator's decision, the employee could not be removed from the payroll.

On April 19, 2022, the Department informed approximately eight two (82) employees they were being placed on leave without pay, with benefits, effective April 25, 2022, based on allegations their proof of COVID-19 vaccination was fraudulent. The employees were told they could contact the Department if they believed the allegation they submitted fraudulent proof of vaccination was wrong. On April 21, 2022, the Union wrote the Department and demanded it rescind its decision to remove these employees from the payroll without the benefit of a due process hearing.

By letter dated April 22, 2022, the Department set forth its position placement of these employees on a leave without pay status did not constitute discipline, and, therefore, did not implicate the disciplinary procedures set forth in the Education Law or the parties' Collective Bargaining Agreement ("Agreement").

4

Thereafter, by letter dated May 3, 2022, the Union wrote to me requesting I take jurisdiction over this dispute. The Union cited to that portion of the Award which states "should either party have reason to believe the process set forth herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution".

By letter dated May 4, 2022, the Department wrote in opposition to the Union's May 3, 2022, letter. The Department stated it was in full compliance with my Award, as well as the Agreement and applicable law. The Department also insisted this matter was not properly before me.

On May 4, 2022, I conducted a conference call with the parties. At that time, each side was given the opportunity to argue their positions.

Thereafter, on May 6, 2022, the Union submitted further argument in support of its position. The Department responded in a letter dated May 10, 2022.

Upon my receipt of the parties' written submissions, I closed the record.

### DISCUSSION AND FINDINGS

### The Issues:

The basic issues to be decided are as follows:

5

1. Is the Department's decision to place the approximately eighty two (82) employees on leave without pay, with benefits, subject to my jurisdiction pursuant to the September 10, 2021, Award?

2. If so, what shall be the remedy?

## Position of the Parties

The Department insists the facts of circumstances regarding its placement of the eighty two (82) employees on leave without pay, with benefits, is not within my jurisdiction pursuant to the Award. According to the Department, the Award sets forth an expedited process to review Department employees' requests for exemptions and accommodations from the August 21, 2021, mandate to submit proof of COVID-19 vaccination by September 29, 2021. The Department maintains the requests for an exemption or accommodation were limited to medical and religious grounds. It contends no other issue is covered by the Award.

The Department contends it placed the employees on a leave without pay status as a result of the Department's receipt of information from a law enforcement agency the employees in question submitted fraudulent proof of vaccination in order to comply with Commissioner Chokshi's order which required vaccination of all Department staff.

According to the Department, the Courts have held compliance with the Commissioner Chokshi's Order is a "condition of

6

employment". The Department maintains this situation is no different to the Department's unilateral action against an employee who is not certified. As such, the Department maintains placing employees on leave without pay for failing to comply with the Commissioner Chokshi's Order comports with applicable due process procedures as long as notice is given, and the employee has an opportunity to respond. In support of its position the Department cites Broecker v. N.Y. Dep't of Educ., 21-CV-6387, 2022 WL 426113 at *7-8 (E.D.N.Y. Feb. 11, 2022); and N.Y. City Mun. Labor Comm. V. City of New York, 151169/2022 (Sup. Ct. N.Y. County Apr. 21, 2022).

The Department argues employees who are identified in connection with a law enforcement investigation into the submission of fraudulent vaccination cards are outside the scope of the Award. Furthermore, the Department insists the Award's reference to a party's failure to implement the process does not apply to the facts and circumstances presented, here. According to the Department, the language relied upon by the Union refers specifically to the "administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school". The Department asserts since that process is not at issue, here, the Union's claim is misplaced.

7

Case 1:23-cv-08332-LDH-RML Document 1 Filed 11/09/23 Page 65 of 72 PageID #: 65

For the reasons set forth above, the Department contends the Union's request for relief pursuant to the Award must be denied.

The Union, on the other hand, argues the Department's decision to place these employees on leave without pay, with benefits, is predicated on the Award. It insists this matter is subject to my continued jurisdiction. The Union asserts the Agreement prohibits an employee from being removed from the payroll without establishing probable cause in a due process hearing. [1]

The Union maintains the Department's contention this situation is akin to the removal of an uncertified employee is misplaced. According to the Union, approval of certification is issued by the State. In addition, the Union insists an employee is either certified by the State or is not, there is no underlying question of fact to be determined. The Union asserts if an employee proves they have completed all of the necessary paperwork, but they are not yet certified, they will not be terminated.

The Union urges in this instance 'the Department made a unilateral decision to place the employees on leave, without pay, based solely on a communication from another agency the employees were not vaccinated. The Union contends the Department has no direct knowledge of whether that assertion is true or false.

---

[1] There are limited exceptions to this procedure which are inapposite.

Case 1:23-cv-08332-LDH-RML  Document 1  Filed 11/09/23  Page 66 of 72 PageID #: 66

According to the Union, the Department removed the employees from the payroll and subsequently allowed them to provide additional evidence they are vaccinated.  The Union maintains as of May 6, 2022, employees who have contacted the Department asserting they have been placed on leave without pay in error have not received any response, yet they remain suspended without pay.

The Union asserts the only authority for the Department to place employees on leave without pay, with benefits, is the Award. It contends the Department is improperly invoking the Award, and the action cannot be taken until the dispute concerning their vaccination status is determined through the Award's stated process.

In short, the Union argues the Department's unilateral decision to place employees on leave without pay, with benefits, based on the communication from another agency the employees are not vaccinated falls within the jurisdiction of the Award.

**Opinion**

Certain preliminary comments are appropriate.  As an arbitrator my role is a limited one.  In order for me to determine whether I can assert jurisdiction over the Department's actions as alleged by the Union, I am limited by the language of the Award. If the Award is clear, I must enforce it according to its plain meaning.

9

RECEIVED NYSCEF: 07/01/2022

With these principles in mind, I turn to the facts presented.

I find I have jurisdiction to consider this matter. While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

Implicit in such a designation of leave without pay is the individual failed to comply with the vaccine mandate. Here, there is a dispute whether the employees did or did not comply. Without that being assessed, or at least submitting evidence to show a high likelihood of non-compliance, the predicate for placing an employee on leave without pay does not exist.

The Department's decision to automatically place these employees on leave without pay is inconsistent with the language and underpinnings of my Award. Nothing in the Award grants the Department such use of leave without pay status.

10

Case 1:23-cv-08332-LDH-RML   Document 1   Filed 11/09/23   Page 68 of 72 PageID #: 68

Based upon the above, I find the Department failed to properly implement the due process protections of my Award.  The Union has the right to assert the Department's process "is not implemented in good faith."  To be clear, nothing in my Award was intended to abrogate any due process rights the parties otherwise maintained with regard to employment status.

I also disagree with the Department's position the court decisions it cites support the removal of these employees from pay status without a hearing.  Those court decisions confronted an entirely different factual scenario.  Unlike this matter, in those cited cases, there was no claim the employees at issue were vaccinated.

In denying the request for a preliminary injunction, Justice Kim, in NYC Municipal Labor Committee, supra., specifically found the absence of that factual issue in her determination.  Here, of course, the employees assert they are in fact vaccinated.  This raises a factual issue that is ripe for adjudication pursuant to my Award.

Based on the reasons set forth above, I take jurisdiction over the Department's placement of the approximately eighty two (82) employees placed on leave without pay, with benefits.  The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an

11

employee's claim they have submitted proof of vaccination.  If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

## AWARD

1. Pursuant to Section 1L of my Award dated September 10, 2021, I shall assume jurisdiction over the Department's decision to place eighty two (82) employees on leave without pay, with benefits, effective April 25, 2022.

2. The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NASSAU      )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator


DOE.UFT.CHIARA.NAKASHIAN.AWD

13

(Exhibit H)

**From:** noreply@salesforce.com <noreply@salesforce.com> on behalf of NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
**Sent:** Monday, March 7, 2022 10:40 AM
**To:** Fugelsang Christophe <CFugelsang3@schools.nyc.gov>
**Subject:** Reasonable Accommodation Appeal Determination

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: The employee has failed to establish a sincerely held religious belief that precludes vaccination. DOE has demonstrated that it would be an undue hardship to grant accommodation to the employee given the need for a safe environment for in-person learning

**For all employees other than DOE employees:** Pursuant to the City of New York's policy concerning the vaccine mandate, you now have **three business days** from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).

**For Department of Education (DOE) employees:** Pursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see DOE Denial of Appeal Information.

(Exhibit I)

**From:** Division of Human Resources <DHR@schools.nyc.gov>
**Sent:** Monday, March 21, 2022 5:02 PM
**To:** Fugelsang Christophe <CFugelsang3@schools.nyc.gov>
**Subject:** Termination of NYCDOE Employment

March 17, 2022

FUGELSANG, CHRISTOPHER
TEACHER
EMPL ID: 0963246

Dear FUGELSANG, CHRISTOPHER:

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all NYCDOE staff and that you would be terminated from DOE as a result. Compliance with that Order is a condition of employment. Since you did not comply with the Order and did not choose to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education is terminated, effective March 17, 2022. Please note that your health insurance coverage through the City also ceases upon termination.

If you have not already done so, you must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.

Thank you for your service to the New York City Department of Education.

Sincerely,

NYCDOE Division of Human Resources