UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CHRISTOPHER FUGELSANG,

                Plaintiff,

    -against-

THE DEPARTMENT OF EDUCATION OF NEW
YORK CITY,

                Defendant.

**MEMORANDUM AND ORDER**

23-cv-08332 (LDH) (LKE)

---

LASHANN DEARCY HALL, United States District Judge:

    Christopher Fugelsang ("Plaintiff"), proceeding pro se, brings claims against the

Department of Education of the City of New York ("DOE" or "Defendant"), pursuant to Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 and § 1983, the New York

State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"),

and New York common law.  Specifically, Plaintiff asserts claims for religious discrimination

and infringements on his freedom of speech, his freedom of religion, and his right to due process.

Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss

the complaint in its entirety.

## BACKGROUND[1]

    Plaintiff, a practicing Catholic, began working for Defendant as a teacher in 2009.

(Compl. ¶¶ 17, 19, ECF No. 1.)  By 2012, Plaintiff earned a tenured position as a special

---

[1] The following facts are taken from the complaint, documents attached to and incorporated by reference into the
complaint, and public documents of which the Court takes judicial notice.  *See Leonard F. v. Israel Disc. Bank of New
York*, 199 F.3d 99, 107 (2d Cir. 1999) (holding that when ruling on a Rule 12(b)(6) motion to dismiss, the Court
"confine[s] its consideration to facts stated on the face of the complaint, in documents appended to the complaint or
incorporated in the complaint by reference, and to matters of which judicial notice may be taken."); *Chambers v. Time
Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court

education teacher.  (*Id.* ¶¶ 15, 18.)  In March 2020, New York City, along with dozens of cities across the nation, implemented various mandatory citywide precautions in response to the deadly, highly contagious COVID-19 virus.[2]  In August 2021, the Food and Drug Administration approved the first vaccine designed to fight COVID-19.[3]  Shortly thereafter, Defendant mandated that all its employees show proof that they began the COVID-19 vaccination process by September 2021.  (*See id.* ¶ 19; Compl. Ex. C, at 3.)  Any employee who failed to comply with this new requirement would be refused entry to DOE premises, would not be paid, and risked termination.  (*See* Compl. ¶ 20; Compl. Ex. C, at 3.)  Citing his Catholic faith, Plaintiff did not receive a COVID-19 vaccination.  (Compl. ¶ 19.)  As a result, Defendant informed Plaintiff that if he did not receive a vaccination by October 1, 2021, he would be placed on leave without pay, which would deprive him of his salary and benefits.  (*Id.* ¶ 20.)

On October 24, 2021, Plaintiff sent a letter to Defendant detailing the merits of his faith-based objections to the COVID-19 vaccine and requesting that he be afforded a religious exemption.  (Compl. Ex. B.)  Although the complaint does not specify exactly when, Plaintiff's request was denied by Defendant, and his appeal of that decision was subsequently denied by an independent arbitrator.  (*See* Compl. ¶¶ 21, 23.)  When Plaintiff sought review of those denials by the City of New York Reasonable Accommodations Appeals Panel (the "Citywide Panel"),

---

may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."). These facts are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

[2] The Court takes judicial notice of facts regarding the spread and lethality of COVID-19 as reported by dependable public health authorities. *See Joffe v. King & Spalding LLP*, No. 17-CV-3392, 2020 WL 3453452, at *7 n.9 (S.D.N.Y. June 24, 2020) (collecting cases).

[3] *See FDA Approves First COVID-19 Vaccine*, U.S. Food & Drug Admin., https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine#:~:text=Today%2C%20the%20U.S.%20Food%20and,years%20of%20age%20and%20older. (dated Aug. 23, 2021).

Plaintiff's exemption request was once again denied on March 7, 2022.  (Compl. ¶ 24; Compl. Ex. H.)  The Citywide Panel rested its decision on two considerations.  First, the Citywide Panel observed that Plaintiff "ha[d] failed to establish a sincerely held religious belief that preclude[d] vaccination." (Compl. Ex. H.)  Second, it explained that "DOE ha[d] demonstrated that it would be an undue hardship to grant accommodation to [Plaintiff] given the need for a safe environment for in-person learning." (*Id.*)  Just over a week later, on March 17, 2022, Defendant terminated Plaintiff. (*Id.* ¶ 25; Compl. Ex. I.)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court deciding whether to grant a motion to dismiss must "draw all reasonable inferences in [the plaintiff's] favor, assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (internal citation omitted).  "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Further, a court is not obligated to accept a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v.*

*Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94, 127 (2007) (per curiam)).  This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.    Employment Discrimination Claims

#### A.  Title VII

##### 1.  Religious Discrimination

Under Title VII, it is "unlawful for employers to discharge or otherwise to discriminate against any individual in his or her employment because of such individual's religion." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 291 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (quoting 42 U.S.C. § 2000e-2(a)(1)) (internal quotation marks omitted).  A plaintiff pleads a sufficient Title VII claim for employment discrimination on the basis of religion by alleging (1) that he "is a member of a protected class," (2) that he "was qualified" for his position, (3) that he "suffered an adverse employment action," and (4) facts that provide "at least minimal support for

the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (citation and internal quotation marks omitted).

Defendant argues that Plaintiff's religious discrimination claim is ripe for dismissal because he fails to allege that his termination was motivated by discriminatory intent.  (Mem. L. in Supp. Def.'s Mot. to Dismiss ("Def.'s Mem") at 12–13, ECF No. 15.)  The Court agrees.  It is well-established that an inference of discriminatory motivation can arise from a variety of circumstances, such as "the employer's criticism of the plaintiff's performance in [] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir. 2009)) (internal quotation marks omitted); *see also Freckleton v. Ambulnz NY LLC*, No. 21-CV-4615, 2022 WL 4644673, at *4 (E.D.N.Y. Sept. 30, 2022).  Plaintiff alleges nothing of the sort.  That is, Plaintiff does not allege that he was terminated because of his Catholic religion.  Rather, he asserts that he was fired for failing to receive a mandatory COVID-19 vaccination after Defendant denied his request for a religious exemption.  (Compl. ¶¶ 20, 24–25.)  The directive to receive a COVID-19 vaccination, even according to Plaintiff, applied to all DOE employees.  (*See id*. ¶ 20.)  Plaintiff does not explain how he was singled out for differential treatment on account of his religious beliefs. Thus, Plaintiff has failed to state a claim for religious discrimination.  *See Famiglietti v. New York City Dep't of Sanitation*, No. 23-CV-2754, 2024 WL 4606817, at *4 (E.D.N.Y. Oct. 28, 2024) (dismissing religious discrimination claim where "Plaintiff explicitly state[d] that he was terminated for not complying with the COVID-19 Vaccine Mandate, which was a condition of

employment imposed across the private and public sector given the public health emergency presented by the coronavirus pandemic." (cleaned up)).

### 2. Failure to Accommodate

An employer may also be held liable under Title VII for failing "to accommodate the religious practice of [its] employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)). To state a claim for failure to accommodate in violation of Title VII, a plaintiff must allege that he "(1) [] held a bona fide religious belief conflicting with an employment requirement; (2) [] informed [his] employer[] of this belief; and (3) [] w[as] disciplined for failure to comply with the conflicting employment requirement." *Baker v. Home Depot*, 445 F.3d 541, 546 (2d. Cir. 2006) (citation and internal quotation marks omitted). Once the employee establishes a prima facie case, the employer "must offer [him] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (citation omitted). A religious accommodation is deemed to pose an undue hardship if it is substantial in the overall context of an employer's business. *Groff*, 600 U.S. at 468. "'A reasonable accommodation can never involve the elimination of an essential function of a job,' and 'a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.'" *Russo v. Patchogue-Medford Sch. Dist.*, No. 22-CV-01569, 2024 WL 149131, at *5 (E.D.N.Y. Jan. 12, 2024), *aff'd*, 129 F.4th 182 (2d Cir. 2025) (quoting *Tafolla v. Heilig*, 80 F.4th 111, 119 (2d Cir. 2023)) (internal alterations omitted). An undue hardship defense "may be raised in a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the

complaint." *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) (citation and internal quotation marks omitted).

Defendant argues that Plaintiff's failure to accommodate claim fails because it "could not have accommodated Plaintiff without suffering an undue hardship." (Def.'s Mem. at 7.) That is, Defendant contends that, given Plaintiff's role as a special education teacher, his non-compliance with the vaccine mandate would have posed an unjustifiable risk to the student population, who at the time did not have access to COVID-19 vaccines. (Def.'s Mem. at 9-10.) The Court agrees.

Even assuming Plaintiff has established a prima facie case that Defendant failed to accommodate his religious exemption request, any such showing is overcome by Defendant's undue hardship defense. Indeed, the hardship that the presence of unvaccinated employees would pose for the DOE has been well-documented by courts in this circuit. *See, e.g.*, *Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265, 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023) (finding that DOE teacher's unvaccinated presence would have posed an undue hardship); *Broecker v. New York City Dep't of Educ.*, 573 F. Supp. 3d 878, 891 (E.D.N.Y. 2021) (noting that DOE's vaccine mandate helped to "prevent[] transmission of the COVID-19 virus and protect[ed] students."); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, at *6 n.7 (S.D.N.Y. May 15, 2023) (finding an "obvious hardship associated with the increased health and safety risk posed to other employees" by allowing plaintiffs to remain at their worksite unvaccinated against COVID-19). As to COVID-19 vaccine mandates, the Second Circuit has made clear that "Title VII does not require covered entities to provide the accommodation that [p]laintiffs prefer" nor does it allow a "blanket religious exemption allowing them to continue working at their current positions unvaccinated"

against COVID-19.  *We the Patriots*, 17 F.4th at 292.  That is especially true of teachers who instruct in classrooms of children with special needs because those children require "specially designed instruction and related services."  *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006).  And Plaintiff himself concedes his close working relationship with his students. (*See* Compl. Ex. B, at 4 (explaining that in his classroom, he "aim[s] to create relationships and bonds with students").)

In a nearly identical lawsuit filed against the DOE by a special education classroom teacher, the court determined that "[e]ven if [the plaintiff] took precautions such as wearing gloves, masks, and a face shield, her presence as an unvaccinated individual would have presented a risk to the vulnerable and still primarily unvaccinated student population and other employees."  *Beickert*, 2023 WL 6214236 at *5 (citation and internal quotation marks omitted).  Taking judicial notice that "the DOE's [v]accine [m]andate helped to prevent transmission of the COVID-19 virus and protected students," *id.* (quoting *Broecker*, 573 F. Supp.3d at 891) (internal quotation marks and alterations omitted), the court held that the plaintiff's "unvaccinated presence would have imposed 'substantial increased costs in relation to the conduct of [the DOE's] particular business' by creating a health and safety risk that would have prevented the DOE from fostering a safe educational and work environment when COVID-19 vaccines had become available," *id.* (quoting *Groff*, 600 U.S. at 470) (alterations in original).  So too here. Accordingly, even at this early stage, Defendant clearly would be able to establish an undue hardship warranting dismissal of Plaintiff's Title VII claims.

### B.  Selective Enforcement Claim

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution requires the government to treat all similarly situated people alike.  *City of Cleburne*

*v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an Equal Protection claim based on a theory of selective enforcement, a plaintiff must plausibly allege that he was treated differently from others similarly situated based on impermissible considerations, such as race, religion, or the exercise of a constitutional right.  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (citation omitted).  "Conclusory allegations of selective treatment may not survive a motion to dismiss."  *D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005), *aff'd sub nom. D.F. v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 180 F. App'x 232 (2d Cir. 2006) (citing *Albert v. Carovano*, 851 F.2d 561, 572, 573–74 (2d Cir. 1988)).  Indeed, to find that a complaint sufficiently states a claim, a court must determine that a jury could ultimately determine that the comparators are similarly situated based on the facts alleged.  *DePrima v. City of New York Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *5 (E.D.N.Y. Mar. 20, 2014) (citation omitted).

Defendant argues that Plaintiff's selective enforcement claim must be dismissed because Plaintiff fails to allege any similarly situated comparators whom Defendants treated differently.  (Def.'s Mem. at 12–14.)  The Court agrees.  Plaintiff does not include a single allegation that he was treated differently than others who were similarly situated.  "Because Plaintiff has not pled that he is similarly situated to any person or specific group, the Court cannot assess whether Defendants treated him differently that they treated anyone else."  *Famiglietti*, 2024 WL 4606817, at *3.  Setting aside Plaintiff's failure to include allegations of similarly situated persons in his complaint, Plaintiff asserts in his opposition that "school delivery people and school bus drivers were allowed to work without getting vaccinated during the worst of the pandemic."  (Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 23, ECF No. 15-10.) Plaintiff adds that "[t]his makes no sense except that Mayor [Eric] Adams helped groups to

which he owed favors, or was particularly interested in, and did not help tenured teachers. This is selective enforcement." (*Id*.)  But this theory undermines Plaintiff's allegation of selective enforcement.  Indeed, by Plaintiff's logic, the reason that he did not receive an accommodation is because, as a teacher, he was not a member of one of the mayor's favored groups—not because he holds certain religious beliefs.  It is, thus, reasonable for the Court to infer from Plaintiff's argument that "it was not the substance of [P]laintiff's stated religious beliefs that resulted in his request being denied."  *Mora v. New York State Unified Ct. Sys.*, No. 22-CV-10322, 2023 WL 6126486, at *14 (S.D.N.Y. Sept. 19, 2023).

## II.     First Amendment Claim[4]

The Free Exercise Clause of the First Amendment "protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'"  *Kane v. DeBlasio*, 19 F.4th 152, 163–64 (2d Cir. 2021) (citation omitted).  The protection "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability."  *Slattery v. Hochul*, 61 F.4th 278, 292 (2d Cir. 2023) (citation and internal quotation marks omitted).  "A law may not be neutral if it explicitly singles out a religious practice," or if it "targets religious conduct for distinctive treatment."  *We The Patriots*, 17 F.4th at 281 (citation omitted).  Likewise, a law may not be "generally applicable" if it either "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions," or "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted

---

[4]Although Plaintiff's complaint does not allege a First Amendment retaliation claim, Plaintiff asserts that he "engaged in speech protected by the First Amendment, namely discussing his religious beliefs, that he suffered an adverse employment action, and that a causal connection between the two existed."  (Pl.'s Opp'n at 24.)  Plaintiff does not allege a single fact that would support the notion that he was terminated for engaging in religious speech.  To the contrary, the complaint plainly alleges that Plaintiff was terminated for failing to comply with the vaccine mandate for which he was denied a religious exemption.  (*See* Compl. ¶¶ 20, 25.)

interests in a similar way." *Fulton v. City of Philadelphia*, 593 U.S. 522, 523, 534 (2021).  A neutral law of general applicability is evaluated under a rational basis review, but policies or laws that are not neutral or generally applicable are subject to strict scrutiny and must be narrowly tailored to serve a compelling state interest.  *Kane*, 19 F.4th at 164.

Defendants argue that the vaccine mandate is a neutral law of general applicability, and that Plaintiff has not alleged any facts that would support an inference that the mandate targeted specific religious conduct for distinctive treatment.  (Def.'s Mem. at 15.)  Applying rational basis review, Defendant argues that its vaccine mandate was rationally related to the government's interest in stopping the spread of COVID-19.  (*Id.*)  The Court agrees.

Notably, the Second Circuit has already found the DOE vaccine mandate at issue facially neutral and generally applicable.  *Kane*, 19 F.4th at 164.  As a matter of law, therefore, the vaccine mandate "does not single out employees who decline vaccination on religious grounds," *id.*, and it "applies to an entire class of people"—"DOE employees and other comparable employees."  *Id.* at 166.  Because DOE's vaccine mandate is neutral and generally applicable, there only needs to be a "rational basis" for its enforcement.  *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002).  Here, the "DOE clearly explained that 'a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety'"—a "rational, and indeed, compelling basis."  *Bonilla v. City of New York*, No. 22-CV-7113, 2023 WL 8372859, at *4 (S.D.N.Y. Dec. 4, 2023) (citation omitted).

### III.    Due Process Claims

#### A.  Procedural Due Process

The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest.  U.S. Const. amend XIV, § 1.  To state a claim that a defendant's actions violated a plaintiff's Fourteenth Amendment right to procedural due process, the plaintiff must establish that he (1) possessed a protected property or liberty interest and (2) faced a deprivation of that interest without constitutionally adequate process.  *O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005).  Pre-deprivation processes "need not be elaborate," and the Constitution "mandates only that such process include, at a minimum, notice and the opportunity to respond."  *Id.* at 198 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)).  Defendant argues that Plaintiff's procedural due process claim must be dismissed because Plaintiff fails to sufficiently allege that he was denied constitutionally adequate process in connection with his termination.  (Def.'s Mem at 18.)  The Court agrees.

Plaintiff alleges that he was terminated in March 2022 "without proper notice [or] a due process hearing."  (Compl. ¶ 19.)  But according to the complaint, Defendant ensured that Plaintiff was well aware that termination was a potential consequence of failure to comply with the vaccine mandate.  Indeed, Plaintiff acknowledges that in August 2021, six months before his termination, Defendant advised employees that, by September 2021, they would need to furnish proof that they had begun COVID-19 vaccination protocols.  (*Id.* ¶ 19.)  The mandate, which Plaintiff attached to the complaint, noted that any employee who failed to comply would be refused entry to DOE premises, would not be paid, and risked termination.  (Compl. Ex. C, at 3.)  And on September 28, 2021, because Plaintiff had not submitted any such proof, Defendant sent

him a reminder, also attached to the complaint, that if he did not do so by October 1, 2021 he would be placed on leave without pay, which would deprive him of his salary and benefits.  (*Id.* ¶ 20; Compl., Ex. D.)  Thus, Plaintiff's assertion that he did not receive proper notice of termination is entirely undermined by the allegations in his complaint and the attachments thereto.

As to "the opportunity to respond," Plaintiff appears to fixate on the fact that he did not receive a hearing.  (*See id*. ¶¶ 3, 19, 25.)  But "the opportunity to respond need not be a formal hearing."  *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991).  Indeed, the ability to submit a request for exemption from a mandate before any consequences are imposed is an adequate opportunity to be heard.  *See Garland v. City of New York*, 665 F. Supp. 3d 295, 307 (E.D.N.Y. 2023) (finding that the opportunity to respond was sufficient where "FDNY employee[s] who challenged whether the [v]accine [m]andate should apply to them had the opportunity to seek a religious or medical accommodation" and "were not suspended without pay" if they submitted the request before a certain deadline).  Here, Defendant maintained an online portal through which employees could submit requests demonstrating that they satisfied the criteria for exemptions.  (Compl. Ex. C, at 6–13.)  If Defendant denied a request, the employees could submit an appeal, including supplemental documentation, to an independent arbitrator.  (*Id.* at 10.)  And employees who submitted timely requests were not subject to deprivation of employment or any benefits pending review of their requests or appeals.  (*Id.* at 7–10.)  According to the complaint, Plaintiff fully availed himself of this opportunity.  Indeed, on October 24, 2021, Plaintiff submitted a letter to Defendant detailing his faith-based objections to the vaccine and requesting a religious exemption.  (Compl. Ex. B.)  And when his request was denied, he submitted an appeal, which an independent arbitrator reviewed and denied.  (*See*

13

Compl. ¶ 23.)  That Plaintiff did not physically appear before a tribunal to petition for an exemption does not mean that he was not afforded an opportunity to be heard.  Because Plaintiff was provided notice that he would be terminated for failure to comply with the vaccine mandate and received an opportunity to be heard before his termination, he was afforded constitutionally adequate process.  Therefore, Plaintiff's procedural due process claim must be dismissed.

### B.  Substantive Due Process

The Fourteenth Amendment Due Process Clause guarantees "more than fair process"; it "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840, (1998) (internal quotation marks and citations omitted).  "Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  To analyze a claim under substantive due process, courts perform a two-step analysis.  *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021).  First, the court must identify the constitutional right at stake.  *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).  Then, the court must analyze whether the state action "was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Southerland*, 680 F.3d at 151–52.  Defendant argues that the Court must dismiss Plaintiff's substantive due process claim because Plaintiff fails to identify any constitutional right at stake.  (Def.'s Mem. at 18.)  The Court agrees.

Plaintiff makes passing references to a denial of substantive due process stemming from the termination of tenured position.  (Compl. ¶¶ 2, 8, 18.)  That is, Plaintiff asserts

14

"[c]onstitutional rights, including protected liberty and property rights, to his position." (*Id.* ¶ 8.) The weight of authority forecloses this claim. Generally, property interests related to employment are not among protected fundamental rights. *Walker v. City of Waterbury*, 361 F. App'x 163, 165 (2d Cir. 2010) (summary order) (quotations omitted). Neither is there a fundamental right to continued public employment. *Maniscalco v. New York City Dep't of Educ.*, 563 F. Supp. 3d 33, 39 (E.D.N.Y. 2021), aff'd, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021) (citation omitted).

Even if the Court agreed that Plaintiff's rights to pursue his profession or to continued employment were fundamental rights, Plaintiff's arguments still fail at the second step of the analysis. Here, plaintiffs "must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" such that the Due Process Clause "would not countenance it even were it accompanied by full procedural protection." *Hurd*, 984 F.3d at 1087 (internal quotation marks and citation omitted). Plaintiff cannot meet that burden.

In *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), the Supreme Court held that Massachusetts's compulsory vaccination law did not violate Fourteenth Amendment substantive due process rights because the mandate was within the State's police power. *See also Zucht v. King*, 260 U.S. 174, 176 (1922) ("*Jacobson* ... settled that it is within the police power of a state to provide for compulsory vaccination"). The Second Circuit and the Supreme Court "have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th at 293 (2d Cir.) Thus, even if Plaintiff maintained a constitutional right in his employment with

15

Defendant, Defendant's decision to terminate him consistent with its vaccination policy was a constitutional condition of employment. Accordingly, Plaintiff's substantive due process claim must also fail.

### C. "Stigma Plus" Claim

The Due Process Clause protects against a person's loss of reputation when that loss is associated with the deprivation of a federally protected liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564 (1972); *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994). Accordingly, the Second Circuit has determined that a stigma – that is, the loss of one's good reputation – may amount to a constitutionally recognized deprivation of liberty without due process if a plaintiff "allege[s] (1) the utterance of a statement . . . that is injurious to [his] reputation, that is capable of being proved false . . . and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005). Thus, to state a so-called "stigma plus" claim, "[t]he defamatory statement must be sufficiently public to create or threaten a stigma." *Id.* (internal quotation marks and citations omitted). Defendant argues that Plaintiff fails to state a stigma plus claim because he does not allege that any false or stigmatizing statement about him was publicly disclosed. (Def.'s Mem at 26.) The Court agrees.

Plaintiff claims that his placement on Defendant's internal Problem Code without a hearing amounts to a stigma plus violation under the Due Process Clause. (Compl. ¶¶ 2, 56.) According to the complaint, Plaintiff's placement on the Problem Code's "no hire" list "permanently stigmatizes" him as an employee who has been charged with misconduct. (*Id.* ¶ 5.) Therefore, Plaintiff argues, Defendant owed him a hearing before imposing the designation. (*Id.*) Not so. Courts in this circuit have consistently held that allegations regarding placement on DOE's problem code database, even without a "name-clearing hearing," are insufficient to state

a stigma plus claim where no statement about the plaintiff was published outside of the agency. *See Green*, 2019 WL 3432306, at *10–11 (dismissing plaintiff's procedural due process claim where plaintiff was flagged with a "no hire code" and placed on the "Problem Code" or "Ineligible Inquiry List"); *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 454 (S.D.N.Y. 2010), aff'd sub nom. *Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012) (dismissing plaintiffs' argument that the DOE deprived them of a constitutionally protected property or liberty right by placing them on the "'Ineligibility/Inquiry' List"); *Arroyo v. Dep't of Educ. of City of New York*, No. 19-cv-7416, 2020 WL 4570380, at *14 (S.D.N.Y. Aug. 6, 2020) (same). Here, the complaint is devoid of any allegations that Defendant shared any information regarding Plaintiff's placement in the Problem Code outside of DOE.  Indeed, Plaintiff only alleges that the designation was reflected as a flag on his personnel file within the department.  (Compl. ¶ 30.) Plaintiff cannot successfully claim that Defendant's records threatened his reputation if they were never made public.  *See Velez v. Levy*, 401 F.3d at 87 (2d Cir. 2005).  Accordingly, Plaintiff's stigma plus claim must also be dismissed.

## IV.    State Law Claims

Defendant also moves to dismiss Plaintiff's NYSHRL, NYCHRL, and state law fraud in the inducement claims.  Because the Court has granted Defendants' motion to dismiss as to Plaintiff's federal claims, it "decline[s] to exercise supplemental jurisdiction" over Plaintiff's state law claims [because] "it 'has dismissed all claims over which it has original jurisdiction'." *Kolari v. N.Y. Presbyterian Hosp.*, 455 F. 3d 118, 121–22 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3) ("If the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint is GRANTED.


                                        SO ORDERED.

Dated: Brooklyn, New York               /s/ LDH
       March 31, 2025                   LaSHANN DeARCY HALL
                                        United States District Judge

18